UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY CHARLES MAYHEW,

    Plaintiff,

v.                                                                          Case No. 5:18-CV-379-Oc-02-PRL

JAMIE E. RUBIO,

    Defendant.

_____/

## **ORDER GRANTING SUMMARY JUDGMENT**

      This matter comes to the Court on a Motion for Summary Judgment filed by the Defendant, Jamie Rubio, Dkt. 38. Plaintiff, Timothy Mayhew, filed a memorandum in opposition, Dkt. 45. With the benefit of briefing by both sides, the Court grants the Defendant's Motion for Summary Judgment, Dkt. 38.

## **BACKGROUND**

      In Summer 2014, Plaintiff was incarcerated at the Marion County Jail while awaiting trial on charges of premeditated first-degree murder, grand theft of a motor vehicle, and first-degree arson of a dwelling. *See State v. Mayhew*, No. 14-CF-002708 (Fla. Cir. Ct. 2014).[1] In October 2014 Plaintiff went to the infirmary at the jail complaining of a rash when Defendant and other infirmary staff discovered

---

[1] Plaintiff now resides at Florida State Prison serving a life term.

that Plaintiff's heartrate was unusually low. Dkt. 1 at 5–6. Plaintiff was given an EKG and his heart was asymptomatic. *Id.* At no point during this visit to the infirmary did Plaintiff complain of pain or discomfort. *Id.* Plaintiff was kept overnight in the infirmary to treat his rash and then Defendant released Plaintiff back into general population. *Id.*

Less than a month later, Plaintiff passed out and hit his head while getting out of bed. *Id.* He was then immediately taken to a local hospital where doctors discovered that he needed a pacemaker. *Id.* This device was inserted that same week. *Id.*

Since then Plaintiff—who was diagnosed with epilepsy before being incarcerated—has had many seizures. *Id.* Plaintiff has a prescribed medication for his seizures but has at times refused to take the medication. Dkt. 39 at 4 ¶¶ 11 & 12. Further, after complaints of eyesight problems, jail medical staff had Plaintiff taken to an ophthalmologist where he was diagnosed with nearsightedness and given a pair of prescription eyeglasses. Dkt. 44-2 at 411.

Plaintiff filed this lawsuit in July 2018. Dkt. 1. Plaintiff alleges that Defendant Rubio refused to treat his heart condition and refused to treat his epilepsy. *Id.* at 6. Plaintiff also alleges that Defendant Rubio failed to "heed recommendations of specialists . . . which caused detrimental damages to

[Plaintiff's] health." *Id.* at 2. Plaintiff seeks an injunction ordering certain medical treatment along with damages. *Id.* at 6 & 8.

**LEGAL STANDARD**

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record showing the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative

evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences in a light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

Defendant moves for summary judgment arguing that Plaintiff has not exhausted his administrative remedies, Defendant is entitled to qualified immunity, Defendant was not deliberately indifferent, and Plaintiff has not established and cannot establish a causal connection between Defendant and any injuries alleged by Plaintiff. Dkt. 38 at 2. Plaintiff disputes each of these. Dkt. 45. For the following reasons Defendant is entitled to summary judgment in his favor.

To begin, Plaintiff has failed to exhaust his necessary administrative remedies before filing this suit. A prisoner is required under the Prisoner Litigation Reform Act to exhaust all available administrative remedies before suing about prison conditions. 42 U.S.C. § 1997e(a). This means that Plaintiff needed to

4

properly complete any grievance process established by the Marion County Jail—even if that process is futile or inadequate. *See Lambert v. United States*, 198 F. App'x 835, 839–40 (11th Cir. 2006). It is undisputed that Plaintiff did not exhaust his administrative remedies before filing this suit. Dkt. 40-1 at 27–28: 19–4.

While Plaintiff contends that jail staff prevented him from filing a grievance before proceeding with this lawsuit, this seems unlikely considering Plaintiff's properly submitted—unrelated to this case—grievance about alleged medical mistreatment by another doctor. Dkt. 40-1 at 27–28:19–4. In any event, Defendant Rubio is entitled to qualified immunity from this suit.

In response to Plaintiff's claim, Defendant Rubio argues that the claim is barred by the doctrine of qualified immunity. Qualified immunity protects a government official acting within his discretionary authority from civil lawsuits unless his conduct violates a statutory or constitutional right clearly established when the alleged violation occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)

If an official is engaged in a discretionary function, the burden shifts to the plaintiff to overcome the official's qualified immunity by meeting a two-part test. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). First, he must

show that the defendant violated a constitutional right. *Id.* This step requires a court to analyze the specific constitutional right at issue and decide as a matter of law if the defendant violated such a right. *Id.* Second, if a violation occurred, he must then show that the right was clearly established at the time of the incident. *Id.*

To begin, Defendant was engaged in a discretionary function. As Defendant Rubio notes in his Motion, "it is undisputed that [Defendant] Rubio was acting within his discretionary authority at all relevant and material times to this lawsuit." Dkt. 38 at 8. So Plaintiff must now show that Defendant violated a specific and clearly established constitutional right of Plaintiff's.

Plaintiff contends that Defendant was deliberately indifferent to his serious medical needs in violation of 42 U.S.C. § 1983. Plaintiff's claim amounts to an assertion that Defendant Rubio failed to correctly diagnose and treat Plaintiff's heart problems leading to Plaintiff falling and hitting his head. Yet Defendant's actions do not rise to the level of deliberate indifference.

Typically, a prisoner's complaint about the failure to provide adequate medical care stems from his right to be free from cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). But the Fourteenth Amendment's Due Process clause governs the treatment of pretrial detainees—not the Eighth Amendment. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Here, Plaintiff was a pretrial detainee at the time of

the alleged actions by Defendant Rubio. Dkt. 40 at 2 ¶ 4. In any event, the standard is identical for both the Eighth and Fourteenth Amendment. *Goebert*, 510 F.3d at 1326.

To establish deliberate indifference to a serious medical need a plaintiff must show: (1) that there was an objectively serious medical need; (2) subjectively, that the defendant was deliberately indifferent to that need; and (3) causation between that indifference and the plaintiff's injury. *Id.* For the subjective component of a deliberate indifference claim, a plaintiff must show "that the response made by [the defendant] to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (referencing the identical Eighth Amendment standard) (internal quotes omitted).

The "deliberate indifference standard is 'a difficult burden for a plaintiff to meet[.]'" *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007). Simply put, "mere misdiagnosis or subpar care, even if it rises to the level of medical malpractice, does not constitute deliberate indifference." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-CV-438-0C-39PRL, 2015 WL 3454274, at *10 (M.D. Fla. May 29, 2015). Further, "whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for

medical judgment and therefore not an appropriate basis for grounding liability under the [Fourteenth] Amendment." *Adams*, 61 F.3d at 1545 (referencing the identical Eighth Amendment standard).

Taking the evidence in the light most favorable to the nonmovant, Defendant was not deliberately indifferent to Plaintiff's medical problems. Plaintiff's medical records show sufficient and timely medical care. On October 5th, Plaintiff sought medical attention for a "painful rash" with "sores." Dkt. 44-1 at 156. While being treated for what turned out to be scabies, Defendant Rubio's staff noticed that Plaintiff's "[blood pressure] and [p]ulse [were] low." *Id.* The medical staff at the jail checked his heart with an EKG machine and determined it to be asymptomatic. *Id.* at 160. Defendant and other infirmary staff kept Plaintiff in the infirmary overnight for scabies treatment and checked his pulse multiple times on October 5th and 6th. *Id.* at 158–63. His heartrate—while still low—rose overnight and, when he was examined the next morning, Defendant Rubio determined that Plaintiff was in good enough shape to be released back into general population. *Id.* at 166. Throughout this visit to the infirmary Plaintiff reported no pain or discomfort associated with his heart. *Id.* at 158 & 160.

Two days later Plaintiff returned to the infirmary for a checkup and, again, Defendant Rubio examined him, determined he was in good health, and then released him back into general population. *Id.* at 167. After that checkup Plaintiff

reported no physical health problems for more than three weeks. The next time Defendant Rubio saw Plaintiff was when he passed out and hit his head at the end of October. *Id.* at 171. After that Plaintiff was referred out to cardiac specialists and had a pacemaker device inserted within the week. *Id.* at 174–80.

Deliberate indifference is a high standard to reach and requires more than "mere misdiagnosis or subpar care." *Simmons*, 2015 WL 3454274, at *10. Here, Plaintiff received medical attention for his heart. Defendant Rubio and his staff noticed that Plaintiff had a low heartrate—something that reportedly did not bother Plaintiff—and observed this over two days while Plaintiff was in the infirmary before deciding to release Plaintiff back into general population. Whether this decision was medically negligent is irrelevant. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not[.]'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

As for Plaintiff's claim about seizure medication, Plaintiff was prescribed medication for his seizures. Dkt. 44-4 at 940 (noting that Plaintiff was prescribed Trileptal, a drug used to treat seizures). It is also documented that Plaintiff refused his seizure medication numerous times. *E.g.*, Dkt. 44-2 at 295, 321, 549. This also does not rise to the level of deliberate indifference.

Because Defendant Rubio was not deliberately indifferent he did not violate

Plaintiff's constitutional rights. Thus, he is entitled to qualified immunity. For that reason, summary judgment must be granted in favor of Defendant.

## CONCLUSION

For the reasons stated above this Court grants Defendant's motion for summary judgment. Dkt. 38. The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED** at Tampa, Florida, on February 3, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Plaintiff, pro se